IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4:16-cv-218

WILLIAM BRANDON MEADOWS, )
)
    Plaintiff, )
)
  v. ) **COMPLAINT**
)
LENDMARK FINANCIAL SERVICES, )
LLC, TRANS UNION, LLC, EQUIFAX )
INFORMATION SERVICES, LLC, and )
EXPERIAN INFORMATION )
SOLUTIONS, INC., )
)
    Defendants. )

**NOW COMES** Plaintiff William Brandon Meadows ("Plaintiff"), through counsel, alleging and saying as follows:

## NATURE OF THE CASE

1. Enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA") expressly acts to protect consumers from the willful and/or negligent inclusion of inaccurate information in their credit reports. To that end, the FCRA requires those who report information about a consumer ("Furnishers") to consumer reporting agencies ("CRA") refrain from reporting inaccurate information, conduct a reasonable investigation when information is disputed by a consumer, and to promptly correct inaccurate information. Additionally, the FCRA requires credit reporting agencies to implement reasonable procedures to assure the maximum possible accuracy of information maintained in a consumer's credit report and to conduct reasonable investigations into disputed information.

1

2. Plaintiff brings this FCRA consumer action against Defendants Lendmark Financial Services, LLC ("Lendmark"), Trans Union LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, LLC ("Experian") (collectively "Defendants") for willfully, wantonly, and/or negligently continuing to report the current status of Plaintiff's Lendmark account as "charged off" after Plaintiff disputed this information and provided Defendants with actual notice that the account had been discharged in bankruptcy. This lawsuit further challenges the policies and procedures defendants Trans Union, Equifax, and Experian followed in preparing consumer reports, as well as the reasonableness of Defendants' reinvestigations into Plaintiff's FCRA disputes.

## JURISDICTION AND VENUE

3. Plaintiff brings this consumer action against Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (hereinafter the "FCRA").

4. The Jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that all Defendants reside here.

## PARTIES

6. Plaintiff is a citizen and resident of Greene County, North Carolina and is not an infant, incompetent, nor in the military service of the United States. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7. Defendant Lendmark is a limited liability company organized and existing under and by virtue of the laws of the State of Georgia with a registered office in Raleigh, North Carolina.

8. Defendant Trans Union is a limited liability company organized and existing under and by

virtue of the laws of the State of Delaware with a registered office in Raleigh, North Carolina.

9. Defendant Equifax is a limited liability company organized and existing under and by virtue of the laws of the State of Georgia with a registered office in Raleigh, North Carolina.

10. Defendant Experian is a corporation organized and existing under and by virtue of the laws of the State of Ohio with a registered office in Raleigh, North Carolina.

11. Defendants Trans Union, Equifax, and Experian (collectively the "CRAs") are "consumer reporting agencies" as defined by 15 U.S.C. § 1681(f) and are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d), to third parties for monetary compensation.

## FACTUAL ALLEGATIONS

12. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

13. Prior to 20 May 2015, Plaintiff obtained credit from Lendmark for personal, family, or household purposes ("Debt").

14. On or about 20 May 2015, the Debt was discharged under section 1328(a) of title 11, United States Code ("Discharge"). On or about 22 May 2015, Lendmark was served with a copy of that Order.

15. On or about 17 December 2015, Plaintiff obtained a copy of his consumer reports from the CRAs, and discovered that the Lendmark Debt was inaccurately reported therein as a continuing obligation without any indication of the Discharge ("Inaccurate Tradeline").

16. On or about 17 December 2015, Plaintiff disputed the Inaccurate Tradeline with the CRAs. Upon information and belief, the CRAs transmitted Plaintiff's disputes in their entirety to Lendmark ("First Dispute").

3

17. On or about 10 January 2016, Experian notified Plaintiff that its reinvestigation was complete; however, the Inaccurate Tradeline remained unchanged.

18. On or about 12 January 2016, Equifax notified Plaintiff that its reinvestigation was complete; however, the Inaccurate Tradeline remained unchanged.

19. On or about 12 January 2016, Trans Union notified Plaintiff that its reinvestigation was complete; however, the Inaccurate Tradeline persisted to inaccurately reflect the status of the Debt and inaccurately indicated that Plaintiff had a high balance long after the Discharge.

20. On or about 1 March 2016, Plaintiff redisputed the Inaccurate Tradeline with the CRAs. Upon information and belief, the CRAs transmitted Plaintiff's disputes to Lendmark in their entirety; including a court record indicating that the Debt was included in bankruptcy ("Second Dispute").

21. On or about 24 March 2016, Equifax completed its reinvestigation which resulted in a modification of the Inaccurate Tradeline to indicate that the Debt was included in bankruptcy – proving that a reasonable reinvestigation could result in the correction of the Inaccurate Tradeline.

22. It is currently unknown whether Equifax modified the Inaccurate Tradeline pursuant to a request from Lendmark or of its own accord; however, if Lendmark directed Equifax to modify the Inaccurate Tradeline, Lendmark had an affirmative obligation to instruct Trans Union and Experian to do so as well.

23. On or about 29 March 2016, Experian notified Plaintiff that its reinvestigation was complete; however, the Inaccurate Tradeline persisted on his consumer report as a continuing obligation without any indication of the Discharge.

24. To date, Trans Union has failed to reinvestigate Plaintiff's Second Dispute and notify him of

the results thereof.

25. Had the CRAs adopted reasonable procedures to assure the maximum possible accuracy of the consumer reports they prepared pertaining to Plaintiff, they would have ascertained that the Debt was discharged in bankruptcy and reported the Inaccurate Tradeline correctly.

26. Had Defendants performed reasonable investigations, reviewed all pertinent information submitted in connection with the First Dispute or Second Dispute, or obtained a copy of Plaintiff's publicly available Discharge; Defendants would have discovered that the Debt was discharged in bankruptcy and that the Inaccurate Tradeline was, therefore, incomplete and materially misleading.

27. The Defendants do not, and could not, have evidence which would tend to contradict Plaintiff's claim that the Debt was discharged in bankruptcy and, therefore, Defendants acted willfully or in reckless disregard for Plaintiff's rights under the FCRA in concluding that the Inaccurate Information was verifiable and correct.

28. Moreover, Plaintiff avers on information and belief that the CRAs willfully adopted policies and procedures for monitoring, reporting, and investigating public records that created an unreasonable risk of violating Plaintiff's rights under the FCRA in the interest of maximizing profits and to the detriment of the accuracy and integrity of the consumer reports prepared and disseminated thereby.

### COUNT ONE: VIOLATIONS OF 15 U.S.C. §1681s-2(b)
### (LENDMARK)

29. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

30. On at least one occasion within the past two years, by example only and without limitation, Lendmark violated 15 U.S.C. §1681s-2(b) with respect to Plaintiff by failing to:

   a. Conduct reasonable reinvestigations into Plaintiff's CRA disputes regarding the Inaccurate

Tradeline pursuant to 15 U.S.C. § 1681s-2(b)(1)(A);

b. Review all relevant information provided by the CRAs in connection with Plaintiff's disputes pursuant to 15 U.S.C. § 1681s-2(b)(1)(B);

c. Report its reinvestigation results to all CRAs upon finding the Inaccurate Tradeline to be incomplete or inaccurate pursuant to 15 U.S.C. § 1681s-2(b)(1)(D); and,

d. Promptly modify, delete, or permanently block the reporting of the Inaccurate Tradeline upon finding that the information was inaccurate, incomplete, or unverifiable pursuant to 15 U.S.C. § 1681s-2(b)(1)(E).

31. On information and belief, the procedures followed by Lendmark's employee(s) or agent(s) in its reinvestigations into Plaintiff's disputes were the procedures that Lendmark intended its employee(s) or agent(s) to follow and such employee(s) or agent(s) did not make a mistake (in the way Lendmark's procedures were followed) when Plaintiff's disputes were received, processed and responded to.

32. On information and belief, Lendmark's FCRA violations were willful in that they were the result of, *inter alia*, Lendmark's:

a. Decision to receive consumer disputes, including Plaintiff's, from CRAs via ACDV forms – which reduce a consumer's dispute to a two or three digit code – and its unreasonable exclusive reliance thereon;

b. Decision to ignore its internal records and previous communications related to Plaintiff which contained definitive proof that the Inaccurate Tradeline was in fact inaccurate;

c. Adoption of standard and systemically unlawful reinvestigation procedures consisting of little more than comparing ACDVs with its internal computer screen for the account and repeating back to the ACDV system the same information Lendmark had already reported

to the CRAs;

d. Failure to conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate;

e. Failure to heed the guidance set forth in the *Saunders v. B.B.&T* FCRA decision by the Fourth Circuit when it implemented and followed the reinvestigation procedures referred to herein;

f. Failure to heed the guidance set forth in the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it implemented and followed the reinvestigation procedures referred to herein;

g. Failure to take appropriate remedial action in response to similar lawsuits filed against Lendmark; and,

h. Failure to comply with Regulation V, 12 C.F.R. §1022.43.

33. Moreover, Plaintiff avers on information and belief that Lendmark's violations of 15 U.S.C. § 1681s-2(b) were the result of policies adopted in furtherance of Lendmark's pecuniary interests rather than out of concern for the accuracy and integrity of the information it furnishes about consumers to CRAs.

34. As a result of Lendmark's violations of 15 U.S.C. 1681s-2(b), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, frustration and other mental and emotional distress.

35. Lendmark's violations of 15 U.S.C. §1681s-2(b) were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Lendmark was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

36. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Lendmark in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

### COUNT TWO: VIOLATIONS OF 15 U.S.C. §1681e(b)
### (TRANS UNION, EQUIFAX, and EXPERIAN)

37. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

38. The CRAs each violated 15 U.S.C. §1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

39. The CRAs failed to adopt and follow reasonable procedures to assure maximum possible accuracy – which exist and would have prevented the inclusion of the Inaccurate Tradeline in Plaintiff's consumer reports – despite decades of legal challenges to those procedures and with knowledge that the procedures followed created an unjustifiably high risk of violating the FCRA rights of Plaintiff and similarly situated consumers.

40. The CRAs failed to take appropriate remedial actions in response to similar lawsuits.

41. On information and belief, the CRAs have intentionally failed to adopt and follow reasonable procedures to assure the maximum possible accuracy of the information they collect and disseminate about consumers like Plaintiff for their pecuniary gain (e.g., maximizing profits and protecting their competitive advantages) and at the expense of the accuracy and integrity of the consumer information collected and disseminated thereby.

42. As a result of the CRAs violations of 15 U.S.C. §1681e(b), Plaintiff suffered and continues to suffer actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, frustration and other mental and emotional distress.

43. The CRAs violations of 15 U.S.C. §1681e(b) were willful, rendering each CRA liable for,

*inter alia*, punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, the CRAs were negligent, which entitle the Plaintiff to recover under 15 U.S.C. §1681o.

44. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

### COUNT THREE: VIOLATIONS OF 15 U.S.C. §1681i(a)
### (TRANS UNION, EQUIFAX, and EXPERIAN)

45. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

46. On information and belief, the CRAs each violated 15 U.S.C. §1681i(a) by:

    a. Failing to conduct reasonable reinvestigations to determine whether the disputed Inaccurate Tradeline was inaccurate and record the current status of the Inaccurate Tradeline or delete it from Plaintiff's credit files pursuant to 15 U.S.C. § 1681(a)(1);

    b. Failing to provide Lendmark with all relevant information regarding Plaintiff's disputes pursuant to 15 U.S.C. §1681i(a)(2)(A);

    c. Failing to review and consider all relevant information submitted by Plaintiff pursuant to 15 U.S.C. §1681i(a)(4); and,

    d. Failing to promptly delete the disputed Inaccurate Tradeline from Plaintiff's credit files or modify the Inaccurate Tradeline upon a lawful reinvestigation pursuant to 15 U.S.C. §1681i(a)(5)(A).

47. The CRAs failed to conduct reasonable reinvestigations despite decades of legal challenges to the perfunctory "investigations" they conducted in this and similar cases – and did so with knowledge that their reinvestigations created an unjustifiably high risk of violating the rights of Plaintiff and similarly situated consumers (e.g., not conducting any independent inquiry
9

into Plaintiff's disputes beyond reducing them to a two or three digit code).

48. The CRAs failed to take appropriate remedial actions in response to similar lawsuits.

49. On information and belief, the CRAs have intentionally failed to conduct reasonable reinvestigations in order to maximize their profits and to protect their competitive advantages at the expense of the accuracy and integrity of the consumer information collected and disseminated thereby.

50. As a result of the CRAs' violations of 15 U.S.C. §1681i(a), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, frustration and other mental and emotional distress.

51. The CRAs' violations of 15 U.S.C. §1681i(a) were willful, rendering each of them individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, the CRAs were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

52. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

**WHEREFORE**, Plaintiff prays the Court for judgment as set forth below:

1. That Plaintiff have and recover actual and statutory damages against each Defendant pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o;

2. That Plaintiff recover punitive damages from each Defendant pursuant to 15 U.S.C. § 1681n;

3. That Plaintiff recover his reasonable attorneys' fees incurred in this matter pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o from Defendants, jointly or individually.

4. That the costs of this action be taxed to Defendants, jointly or individually;

5. For a trial by jury on all issues so triable; and,

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the __ day of August, 2016.

                **MAGINNIS LAW, PLLC**
                *Counsel for Plaintiff*


         BY: _____
                EDWARD H. MAGINNIS
                N.C. State Bar No. 39317
                ASA C. EDWARDS IV
                N.C. State Bar No. 46000
                4801 Glenwood Avenue, Suite 310
                Raleigh, North Carolina 27612
                Telephone: 919.526.0450
                Fax:   919.882.8763
                emaginnis@maginnislaw.com
                aedwards@maginnislaw.com